IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DESHAWN CARLOS EPPS, #26416-075, <br><br> Plaintiff, <br><br> v. <br><br> WARDEN SPROUL, <br> AW SOSA, <br> AW LECLAIR, <br> MS. DUNN, <br> UM BYRUM, <br> UM WALLACE, <br> LT. HENDERSON, <br> LT. BLAIR, <br> LT. HUGGINS, and <br> J. HUGHES, <br><br> Defendants. | Case No. 22-cv-00514-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Deshawn Carlos Epps, a federal prisoner incarcerated at the United States Penitentiary located in Marion, Illinois ("USP Marion"), commenced this action for violations of his constitutional rights by filing a document titled "Motion for Injunction." (Doc. 1). Because Epps included in the motion a case caption listing defendants, clearly stated the relief he is seeking, and explained why he believes he is entitled to that relief, the Court construed the motion for injunction as both a complaint and a motion for preliminary injunction. (Doc. 3). The Court denied the motion for preliminary injunction and advised Epps that the Complaint would be reviewed pursuant to 28 U.S.C. §1983 in a separate order. On April 13, 2022, Epps filed a second preliminary injunction motion. (Doc. 4).

Prior to addressing the motion, the Court will conduct a preliminary review of the

Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the pro se complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### THE COMPLAINT

Epps alleges the following: On December 10, 2021, escorted by another inmate, Epps went to the medical unit because he was experiencing loss of vision. (Doc. 1, 4). He spoke to Nurse Hughes and told Hughes that he was blind. Hughes told Epps that his condition was not severe enough to send him to the emergency room and instructed Epps to back to his housing unit. The next day, Epps woke up completely blind. He informed Officer Lunon, who called medical. Epps was taken to a hospital. He was told by the optometrist he would never see again. Epps returned to USP Marion on December 14, 2021.

When he returned to USP Marion, Epps was placed in the special housing unit. He was told that he would be "shipped to a medical care level 3 facility." After a few weeks in the special housing unit, Defendants were "trying to kick [him] out to the general population." (Doc. 1, p. 2). Epps filed "BP-8" forms complaining that he did not feel safe moving back to general population and into a cell with two cellmates because he is legally blind and could not defend himself. He did not receive a response from Warden Sproul, Assistant Warden Sosa, Assistant Warden LeClair, Dunn, Unit Manager Byrum, or Unit Manager Wallace. Epps also informed Defendants that he would like physical and occupational therapy and to see an outside optometrist for his eye condition but did not receive any of these services.

On January 27, 2022, Epps was placed in general population and assigned a cell with two other cellmates. One of the cellmates was the subject of multiple PREA investigations for rape of

other inmates and a known sex offender. Epps asked for a cell change, and his requests were denied.

On February 14, 2022, Epps "was placed on call-out for optometry." He was given a paper stating he had "low-vision, care level 2, and sunglasses." (Doc. 1, p. 2). Later that day, "[a]fter being approached and threatened," Epps and his cellmate had a physical altercation. (Doc. 4, p. 2).

While at USP Marion staff have accused Epps of being a sex offender, his mail has gone missing, and his re-entry plan has been taken away.

PRELIMINARY DISMISSALS

Epps lists Henderson, Blair, and Huggins in the case caption as Defendants but does not assert any allegations against these individuals in the body of the Complaint. Merely listing a defendant's name in the case caption is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). Therefore, the claims against Henderson, Blair, and Huggins are dismissed without prejudice, and they will be terminated as Defendants.

DISCUSSION

Epps does not specify under which statute he asserts his claims. Being a federal inmate, the Court assumes that he has filed this lawsuit pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). In *Bivens,* the Supreme Court recognized that "victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." *Carlson v. Green,* 446 U.S. 14, 18 (1980). The commonly accepted *Bivens* claims are those for: excessive force in violation of the Fourth Amendment; violation of the Fifth Amendment right to due process; and, violation of the Eighth Amendment via deliberate indifference to a serious medical need. *See Bivens*, 403 U.S. 388; *Davis v. Passman,* 442 U.S. 228 (1979) (Fifth Amendment Due Process damage remedy for gender-based termination of female government employee); *Carlson,* 446 U.S. 14 (Eighth

Amendment deliberate indifference claim allowed regarding deceased inmate's asthma care regime). The Supreme Court has recently emphasized the narrow bounds of claims for damages against the federal government that can proceed under the guise of *Bivens*. *See e.g. Hernandez v. Mesa*, 140 S.Ct. 735 (Feb. 25, 2020) (discussing the very narrow acceptance of newly recognized categories of Bivens claims); *Ziglar v. Abbasi,* 137 S.C.t 1843 (2017) (same).

Accordingly, based on the allegations of the Complaint, the Court finds it convenient to designate the following counts:

**Count 1:** Eighth Amendment claim against Defendants for deliberate indifference to Epps's loss of vision.

**Count 2:** Eighth Amendment claim against Defendants for failing to protect Epps by allowing him to return to general population.

The parties and the Court will use this designation in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[1] pleading standard.**

## Count 1

Count 1 will proceed against Nurse Hughes for denying Epps medical treatment when he came to the health care unit on December 10, 2021 complaining of sudden loss of vision.

Count 1 is dismissed, however, as to Defendants Sproul, Sosa, LeClair, Dunn, Byrum, and Wallace. Deliberate indifference requires that each defendant "actually knew of and disregarded a substantial risk of harm." *Mitchell v. Kallas,* 895 F. 3d 492, 498 (7th Cir. 2018). Here, Epps has not asserted that Defendants had any knowledge of his serious medical condition, the loss of vision, and then ignored his complaints for treatment. He states generally that he wrote grievances "to all

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (7th Cir. 2007).

above defendants and never got a response." (Doc. 1, p. 2). But he does not specify what he stated in the grievances. It is not clear that he was grieving his housing situation or needed medical treatment or to whom the grievances were sent. (*See also* Doc. 4, p. 1).

Epps also asserts that "I informed them I would like physical, occupational therapy I never received it. And go to outside optometry for my eye condition. I never received [those] services." (Doc. 1, p. 2). Epps does not explain the need for physical and occupational therapy regarding his vision loss or who he "informed" that he needed certain medical services. Because the Court cannot determine from the Complaint which of the remaining Defendants had sufficient knowledge and personal involvement in Epps's medical care to support a claim that they were deliberately indifferent, Count 1 is dismissed without prejudice as to Sproul, Sosa, LeClair, Dunn, Byrum, and Wallace.

**Count 2**

Count 2 will also be dismissed without prejudice. Epps claims that "all my defendants [were] trying to kick me out of the general population." (Doc. 1, p. 2). Epps states that he informed "staff" that he should not be put back in general population because he could not defend himself. He was eventually returned to general population and was physical assaulted by his cellmate.

Epps does not assert sufficient allegations to proceed on a failure to protect claim. To successfully state a claim, a plaintiff must claim that (1) "he is incarcerated under conditions posing a substantial risk of serious harm," and, (2) prison officials acted with "deliberate indifference" to that risk. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Here, Epps states that Defendants were in the process of moving him from special housing to general population, but he does not assert that he informed any of them that he was at risk of serious harm, only that he told "staff." Thus, Count 2 is dismissed without prejudice.

**PRELIMINARY INJUNCTION**

Epps has filed a motion seeking emergency relief. (Doc. 4). In the motion, Epps recites similar allegations stated in the Complaint. He asks for a medical diagnosis and that he be immediately transferred to a medical facility or a care level III.

In order to obtain relief, whether through a temporary restraining order ("TRO") or a preliminary injunction, Epps must demonstrate that: (1) his underlying case has some likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) he will suffer irreparable harm without the injunction. *Woods v. Buss*, 496 F.3d 620, 622 (7th Cir. 2007). A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

Furthermore, "a preliminary injunction is appropriate only if it seeks relief of the same character sought in the underlying suit, and deals with a matter presented in that underlying suit." *Daniels v. Dumsdorff*, No. 19-cv-00394, 2019 WL 3322344 at *1 (S.D. Ill. July 24, 2019) (quoting *Hallows v. Madison Cty. Jail*, No. 18-cv-881-JPG, 2018 WL 2118082, at *6 (S.D. Ill. May 8, 2018) (internal citations omitted)). *See also Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994); *Bird v. Barr,* 19-cv-1581 (KBJ), 2020 WL 4219784, at *2 (D.C. Cir. July 23, 2020) (noting that a court "only possesses the power to afford preliminary injunctive relief that is related to the claims at issue in the litigation"). "An injunction, like any 'enforcement action,' may be entered only against a litigant, that is, a party that has been served and is under the jurisdiction of the district court." *Maddox v. Wexford Health Sources, Inc.*, 528 F. App'x 669, 672 (7th Cir. 2013) (quoting *Lake Shore Asset Mgmt., Ltd. v. Commodity Futures Trading Comm'n*, 511 F.3d 762, 767 (7th Cir. 2007)).

The Court finds that Epps is not entitled to preliminary injunctive relief at this time. Epps

is currently proceeding on a single Eighth Amendment claim against Nurse Hughes for denying him medical treatment on December 10, 2021. Although Epps claims he has not received a diagnosis and currently needs additional medical care, he has not asserted these allegations against Nurse Hughes, the only remaining defendant in this action. Epps has failed to state a successful claim for relief against any medical professional currently treating him or any staff in charge of medical care or housing placement at USP Marion, and he cannot seek injunctive relief from individuals who are not parties to this action. For these reasons, Epps motion for emergency injunctive relief is **DENIED.**

### FILING FEE

Epps was directed to pay the full filing fee or file a Motion to Proceed IFP, along with a certification form signed by an institutional officer and a trust fund statement for the six month period immediately preceding the filing of this action by April 13, 2022. (Doc. 3). He was warned that failure to do so would result in dismissal of this case. The deadline has passed, and Epps has not complied with the Court's Order.

The Court will *sua sponte* give Epps additional time to satisfy his filing fee requirement. Epps shall have until **May 9, 2022** to pay his filing fee or submit a properly completed IFP application. **Failure to comply with this Order will result in dismissal of this action for want of prosecution and/or for failure to comply with a court order under Federal Rule of Civil Procedure 41(b).**

### DISPOSITION

For the reasons stated above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** will proceed against J. Hughes but is **DISMISSED without prejudice** as to Sproul, Sosa, LeClair, Dunn, Byrum, and Wallace. **COUNT 2** is **DISMISSED without prejudice.** Because there are no surviving claims against Sproul, Sosa, LeClair, Dunn, Byrum,

Wallace, Henderson, Blair, and Huggins they are **DISMISSED from this suit without prejudice.** The Clerk of Court is **DIRECTED** to **TERMINATE** them as parties.

Because Epps's claims involve his medical care, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Motion for Emergency Injunction (Doc. 4) is **DENIED.**

Epps is **DIRECTED** to pay his filing fee or submit a properly completed IFP application by **May 9, 2022. This case will be dismissed if Epps fails to comply with this Order.** *See* **FED. R. CIV. P. 41(b).**

The Clerk of Court shall prepare for J. Hughes the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is directed to mail these forms, a copy of the Complaint, and this Memorandum and Order to Defendant's place of employment. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If Defendant can no longer be found at the work address provided by Epps, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to file an appropriate responsive pleading to the Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to**

**Administrative Order No. 244, Defendant only need to respond to the issues stated in this Merit Review Order.**

Finally, Epps is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. See FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: April 25, 2022**

                                               *s/Stephen P. McGlynn*
                                               **STEPHEN P. MCGLYNN**
                                               **United States District Judge**

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.