## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

DESHAWN CARLOS EPPS,

     Plaintiff,

v.

J. HUGHES, ELIZABETH HARBISON,
WARDEN DANIEL SPROUL, UNIT
MANAGER WALLACE, UNIT MANAGER
BYRUM, MS. DUNN,

     Defendants.

Case No. 22-cv-00514-SPM

### FIRST AMENDED COMPLAINT

COMES NOW Plaintiff DeShawn Carlos Epps ("Plaintiff" or "Epps"), by and through undersigned counsel, and for his First Amended Complaint against Defendants J. Hughes, Elizabeth Harbison, Warden Sproul, Unit Manager Wallace, Unit Manager Byrum, and Ms. Dunn (collectively, the "Defendants"), hereby states as follows:

### JURISDICTION AND VENUE

1. This action is brought seeking redress for the deprivation of Plaintiff's rights under the Constitution of the United States under the color of state law.

2. This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 1983, 28 U.S.C. §§ 1331, 1343, and *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), as this is a civil action arising under the Constitution of the United States.

3. Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to the claims asserted in this complaint occurred in this district.

1

**PARTIES**

4.     Plaintiff is a citizen of the United States of America who was formerly incarcerated at the United States Penitentiary in Marion, Illinois ("USP-Marion"). As a condition of his incarceration, Plaintiff is currently under electronically monitored home confinement in Nashville, Tennessee, where he is finishing out the duration of his sentence.

5.     At all times relevant to the allegations in this Complaint, Defendant J. Hughes, (hereinafter "Hughes"), was a Registered Nurse at USP-Marion who was responsible for, among other things, the care and treatment of prisoners at USP-Marion, including Plaintiff.

6.     At all times relevant to the allegations in this Complaint, Defendant Elizabeth Harbison ("Harbison"), was a Health Services Administrator and Family Nurse Practitioner at USP-Marion.

7.     At all times relevant to the allegations in this Complaint, Defendant Wallace ("Wallace"), was a Manager of Epps' Housing Unit at USP-Marion.

8.     At all times relevant to the allegations in this Complaint, Defendant Daniel Sproul ("Sproul"), was the Warden of USP-Marion.

9.     At all times relevant to the allegations in this Complaint, Defendant Ms. Dunn ("Dunn") was an Assistant to the Warden of USP-Marion.

10.     At all times relevant to the allegations in this Complaint, Defendant Byrum ("Byrum") was a Manager of Epps' Housing Unit at USP-Marion.

11.     At all times relevant herein, Defendants were acting under color of state law.

12.     Defendants are all Caucasian.

13.     Epps is a Black male.

## FACTUAL BACKGROUND

### I.   UNREASONABLE DELAY IN PROVIDING TREATMENT.

14.   In December 2021, while incarcerated at USP-Marion, Epps ingested an unknown liquid provided to him by other USP-Marion inmates (hereinafter the "Substance").

15.   Upon information and belief, the Substance Epps ingested contained methyl alcohol or some other unknown chemical poison.

16.   After consuming the Substance, Epps began experiencing vision changes and pain, among other things.

17.   On December 10, 2021, Epps had a clinical encounter with Hughes wherein he complained of experiencing sudden blurred and diminished vision, eye pain, and headaches.

18.   During his December 10, 2021, clinical encounter, Epps informed Hughes that he had recently ingested the Substance and was concerned it may be causing his symptoms.

19.   Also during his December 10, 2021 examination by Hughes, Epps asked to be transferred to a hospital emergency room so he could receive external care.

20.   Despite Epps' reported and apparent symptoms, including his obvious vision loss and pain, and despite his request to be transferred, Hughes told Epps that he would not be sending him to the emergency room and instead sent Epps back to his cell.

21.   By way of follow up care, Hughes simply recommended that Epps have his vision checked by an eye doctor during his next clinical visit, which was scheduled to occur or about December 17, 2021.

22.   Upon information and belief, when he examined Epps on December 10, 2021, Hughes knew Epps had no other relevant prior medical history of visual impairment, changes in visual acuity, or any other vision-related issues.

3

23.     The very next day, December 11, 2021, Epps awoke to experience a further dramatic decrease in the quality of his vision to the point where he could barely see shapes and was almost completely blind. Additionally, Epps was experiencing severe dizziness, headaches, and nosebleeds.

24.     Epps notified Officer Lunon that his symptoms had dramatically worsened, and Officer Lunon notified the USP-Marion prison medical department on Epps' behalf.

25.     On December 11, 2021, Epps was transported to the Heartland Regional Medical Center ("Heartland") Emergency Room, in Marion, Illinois.

26.     Epps' December 11, 2021, evaluation at Heartland indicated substantial vision loss in both eyes.

27.     Following his evaluation at Heartland, Epps was transferred to Deaconess Hospital ("Deaconess"), in Evansville, Indiana, for further assessment, treatment, and a higher level of care.

28.     On December 12, 2021, Epps was evaluated at Deaconess, including but not limited to having ophthalmology and neurology consults.

29.     Epps was discharged from Deaconess on December 13, 2021, with a diagnosis of acute vision loss in both eyes and was thereafter returned to USP-Marion.

30.     At the time of his discharge on December 13, 2021, Epps' treating physician at Deaconess opined that there was only a slim possibility his vision would return to a useful level since his optic nerves were so severely damaged and the pupils no longer reacted to light.

31.     While at Deaconess, among other things, Epps was given an IV administration of a concentrated vitamin solution.

4

32.     While at Deaconess, among other things, Epps was told by his treating physicians that, if his condition had been treated sooner, the damage to his optic nerves would not have been so severe.

## II.     FAILURE TO CARRY OUT MEDICAL ORDERS.

### A.     EPPS IS DEPRIVED OF MEDICAL TREATMENT – PRESCRIPTIONS ARE WITHHELD.

33.     While at Deaconess, Epps was also prescribed a treatment regimen of a multivitamin, folic acid, and thiamine to manage and alleviate his symptoms, and potentially mitigate his vision loss.

34.     Epps' discharge instructions from Deaconess included, without limitation, to take his medication as prescribed and to return to the emergency room if his symptoms worsened.

35.     Upon his release from Deaconess, Epps was returned to USP-Marion.

36.     Beginning approximately two weeks after his discharge from Deaconess onward, Defendants Harbison and Hughes failed and refused to provide Epps with his medications, including the medications prescribed to him to treat his vision loss, and Defendants, including but not limited to Hughes, fabricated documentation indicating that Epps had refused his medications.

### B.     EPPS IS DEPRIVED OF MEDICAL TREATMENT – FALSIFIED REFUSALS OF TREATMENT.

37.     On or about December 30, 2021, Hughes prepared a form for Epps to sign falsely stating that Epps had refused to attend an outside eye appointment for treatment of his acute blindness (hereinafter the "Medical Treatment Refusal Form").  In addition to improperly generating said form, on information and belief, Hughes, on the form, indicated that Epps refused to sign it.

38.     A true and correct copy of the December 30, 2021, Medical Treatment Refusal Form is attached hereto and incorporated by reference herein as **Exhibit 1**.

5

39.    On information and belief, Hughes fabricated the Medical Treatment Refusal Form, as well as other records which purport to document Epps' alleged refusal of medical appointments and treatment.

40.    At no point did Epps refuse medical treatment or appointments.

41.    To the contrary, Epps requested the medical appointment which Hughes claimed Epps refused to attend. After it had been scheduled, Hughes apparently cancelled it and then falsely reported it was Epps who refused it.

42.    In fabricating the Medical Treatment Refusal Form and the other records which falsely reflected that Epps refused treatment, Hughes, among other things, further deprived Epps of the opportunity to have outside medical diagnoses and treatment and was deliberately indifferent to Epps' serious medical needs.

### C. DEFENDANTS FAIL TO PROTECT EPPS.

43.    As stated above, following his discharge from Deaconess, Epps was returned to USP-Marion, where he was initially placed in the Special Housing Unit (the "SHU").

44.    While in the SHU, Plaintiff filled out administrative complaint forms stating that he believed being in general population would expose him to imminent danger and that he would be unable to defend himself due to his blindness.

45.    All of the Defendants were placed on express notice, and were thereby aware of, Plaintiff's blindness, and were aware of the danger to which Plaintiff would be exposed if placed back into general population.

46.    In addition to, and without limiting the foregoing, on or about December 22, 2021, Plaintiff submitted administrative complaints to Dunn, Byrum, Wallace, and Sproul, expressing his above stated concerns regarding being released to general population.

47.     Epps received no response to or acknowledgement of his complaints.

48.     Epps thereafter filed continued administrative grievances on or about January 12, 2022, and January 26, 2022, with Defendants Dunn, Byrum, Wallace, and Sproul expressing the same concerns over his housing and safety.

49.     Although Plaintiff did not receive any written responses to or acknowledgment of his formal administrative complaints, Defendants Dunn, Byrum, Wallace, and Sproul assured Plaintiff that he would be shipped to a medical care level 3 facility after he was released from the SHU and that he would not be put back in general population.

50.     On or about January 28, 2022, Plaintiff was released from the SHU, but, rather than being transferred to a medical care level 3 facility, as had been promised, he was placed back into general population, in a cell intended to house only two persons, with two other inmates.

51.     Upon information and belief, one of Plaintiff's two cellmates was a known sex offender and the subject of multiple Prison Rape Elimination Act ("PREA") investigations for attacking and raping other inmates.

52.     Epps was involved in a physical altercation with said cellmate on February 14, 2022, in which Epps was punched in the face, eye gouged, and body slammed by his cellmate.

53.     As a result of the February 14, 2022 altercation, Epps suffered, among other things, a lacerated lip, facial abrasions, and lacerations to his forehead and neck.

54.     Despite his administrative complaints regarding his housing situation and the obvious and imminent danger he faced in general population, and in the company of his cellmates, Epps remained in general population for the remainder of his time in USP-Marion and was not transferred to a medical care facility.

55.     By ignoring Epps' legitimate concerns and complaints regarding the substantial risk of harm he faced in general population as a blind man, and his inability to avoid such risks and adequately defend himself, Defendants Dunn, Byrum, Wallace, and Sproul acted with deliberate indifference to the risks Plaintiff faced in violation of his rights.

### D. EPPS IS DEPRIVED OF MEDICAL TREATMENT – MEDICAL ASSISTANCE DEVICE DEPRIVATION.

56.     Prior to the assault by his cellmate, on February 14, 2022, as part of the treatment regimen for his vision loss, Epps was permitted to have dark glasses, until such time as his condition could be reevaluated by optometry on or about April 11, 2022.

57.     However, on March 9, 2022, Epps' dark glasses were confiscated from him, without justification, by Harbison, after she unilaterally decided he did not require them.

58.     Harbison thereby unjustifiably deprived Epps of the use of a medical assistance device prescribed for his vision loss.

### E. EPPS IS DEPRIVED OF MEDICAL TREATMENT – REQUESTS FOR TREATMENT REPEATEDLY IGNORED AND DENIED.

59.     At various times after being discharged from Deaconess, Epps submitted multiple administrative complaints requesting physical and occupational therapy and communicating his need for outside optometry and other medical appointments due to his vision issues.

60.     Plaintiff did not receive the requested and medically necessary medical services, evaluation, or treatment.

61.     By way of example and not limitation, in April 2022, Epps reported to Harbison and Hughes that he was again experiencing severe eye pain and requested to see an outside physician for diagnosis, treatment, and care.

62. Harbison and Hughes ignored and/or otherwise denied those requests, and the requested evaluation and treatment was not had.

### III. EPPS IS DEPRIVED OF MEANINGFUL ACCESS TO ADMINISTRATIVE REMEDIES.

63. Upon being admitted to USP-Marion to serve out his sentence, during orientation, Epps and other newly arriving inmates were informed by Defendant Sproul that any administrative complaint forms submitted at USP-Marion would be destroyed.

64. It is a common practice at USP-Marion for staff to intercept and destroy administrative complaints, grievances, Federal Tort Claims filings, and other legal papers.

65. Upon information and belief, Defendants Hughes, Harbison, Dunn, Byrum, Wallace, and/or Sproul actually intercepted and destroyed Epps' various administrative complaints, grievances, and other legal papers.

66. It is also a common practice at USP-Marion for persons in the mailroom to intercept, destroy, and/or hold outgoing mail, including but not limited to letters, legal documents, filings, and other papers, so, among other things, deadlines are not met, thereby extinguishing, *ab initio*, the right to pursue legal recourse by way of such filings, complaints, or claims.

67. Upon information and belief, Defendants Hughes, Harbison, Dunn, Byrum, Wallace, and/or Sproul actually intercepted, destroyed, and/or held Epps' outgoing letters, and legal documents, filings, and other papers so deadlines would not be met.

68. Among other things, while at USP-Marion, various pieces of Epps' mail went missing and his re-entry plan was taken from him by Sproul.

69. On various occasions, the persons responsible for providing grievance forms to prisoners at USP-Marion, Defendants Dunn, Byrum, and Wallace, failed and refused to give Epps

the forms necessary to file and pursue administrative grievances, in an effort to prevent Epps from filing and/or pursuing his grievances.

70.    Accordingly, while Epps exercised best efforts to initiate and pursue administrative complaints and to file all forms necessary as a condition precedent to initiating a Federal Tort Claim, Defendants and/or those acting in concert with them, by design, prevented Epps from doing so.

71.    The above-described obstacles notwithstanding, as discussed above, on or about December 22, 2021, January 12, 2022, and January 26, 2022, Epps submitted grievances and administrative complaint forms to Dunn, Byrum, Wallace, and Sproul, expressing his concerns over being released to general population.

72.    Further, throughout the month of April 2022, Epps repeatedly informed Harbison and Hughes of Prison Health Services of his need for outside medical attention due to the severe eye pain he was experiencing and his worsening vision.

73.    In April 2022, Epps submitted grievances and administrative complaints to Harbison, Hughes, and Dunn regarding the Defendants' delay and/or denial of Epps' access to medical treatment, evaluation, and medication.

74.    On April 20, 2022, Epps' administrative complaints were denied.

75.    A true and correct copy of the April 20, 2022, denial is attached hereto as **Exhibit 2**, and is incorporated by reference herein.

76.    Upon information and belief, Epps did not receive notice of the April 20, 2022 denial of his administrative complaint until after the ten-day appeal deadline had passed.

77.    In spite of this, on May 2, 2022, Epps submitted an "Administrative Remedy-Informal Resolution" to Defendants stating that he required outside treatment by optometrists and

neurologists for his vision loss and that Prison Health Services was refusing to provide the requested medical care he needed.

78.    A true and correct copy of Epps' May 2, 2022, Administrative Remedy form is attached hereto as **Exhibit 3** and is incorporated by reference herein.

79.    As stated above, Epps was effectively denied all meaningful access to, and all potential benefit from, bringing claims and pursuing remedies through the designated administrative channels.

80.    All such administrative remedies through which Epps might have otherwise raised and elevated his various complaints, grievances, and claims related to his safety, housing, health, and need for medication and treatment were rendered obsolete as such remedies were neither effective nor available to Epps.

81.    Upon information and belief, all of the above-described misconduct was motivated by racial animus toward Epps, who is Black, by Defendants, who are all Caucasian, and constituted intentional and purposeful discrimination and deprivation of Epps' legally protected rights.

## COUNT I
### [Eighth Amendment – Deliberate Indifference]

82.    Plaintiff hereby incorporates by reference each preceding paragraph of this Complaint as if fully set forth herein.

83.    Hughes' refusal to refer Epps to outside care on December 10, 2021, when Epps first reported experiencing symptoms, resulted in the failure of the ability of medical personnel to timely treat Epps' serious medical condition, and accordingly deprived Epps of the opportunity to receive timely treatment.

84.    The vision changes, blindness, pain, and related symptoms Epps experienced constitutes and/or is reflective of an objectively and sufficiently serious medical need.

11

85.    Epps' serious medical need was so obvious, on December 10, 2021, that even a lay person would recognize his need for medical attention.

86.    On December 10, 2021, when Epps first complained to Hughes of experiencing changes in his vision, blindness, pain, and related symptoms, Hughes had actual knowledge of Epps' objectively serious medical need.

87.    Alternatively, Hughes was aware of facts on that date from which an inference could be drawn that a substantial risk of serious harm existed to Epps, and Hughes drew such inference.

88.    Despite such knowledge, Hughes ignored, failed, and refused to respond reasonably to Epps' objectively serious medical need.

89.    Hughes failed to take reasonable measures to mitigate the substantial risk of serious harm that Epps faced in that Hughes knowingly failed to request, provide, or communicate the need for, or otherwise delayed emergency and/or other medical care to Plaintiff.

90.    Hughes further failed to take reasonable measures to mitigate the substantial risk of serious harm that Epps faced in that Hughes knowingly failed to request, provide, or communicate the need for or otherwise delayed making observations, taking precautions, or monitoring Epps and the progression of his symptoms to avoid the risk of further medical injury.

91.    Upon information and belief, methyl-alcohol poisoning and methyl-alcohol induced blindness (and/or other similar chemical poisonings and related blindness) are not an uncommon occurrence in US penitentiaries, and Hughes knew of and/or should have known of such occurrences, how to identify and diagnose them, the proper course of treatment, and the related risks Epps faced.

92.     Hughes failed to timely render and/or obtain appropriate medical assistance for Epps and prevented Epps from seeing or being timely treated by other medical staff.

93.     Hughes was aware of Epps' complaints regarding his sudden vision changes, vision loss, his complaints of pain, and the suspected causes thereof, and failed to undertake any meaningful effort to render appropriate assistance.

94.     Hughes was deliberately indifferent to Epps' serious medical need rising to the level of an unnecessary and wanton infliction of pain, which is prohibited by the Eighth Amendment.

95.     As a result of the foregoing, Plaintiff was deprived of rights secured by the Constitution and federal law.

96.     Upon information and belief, the above-described conduct was motivated by racial animus toward Epps, who is Black, by Hughes, who is Caucasian, and constituted intentional and purposeful discrimination and deprivation of Epps' legally protected rights.

97.     Defendant's conduct was motivated by an evil motive and/or involves reckless indifference to the federally protected rights of others.

98.     As a direct and proximate result of the actions and inaction described herein, Plaintiff has suffered, and continues to suffer, damages in violation of his constitutional rights, as well as damages which include but are not limited to permanent injuries, pain and suffering, and permanent disability which causes pain, suffering, disability, mental anguish, and the loss of enjoyment of life now and in the future; additionally, Plaintiff will expend money for medical care and rehabilitation that he would not otherwise have had to spend but for the wrongful and deliberately indifferent actions of Defendant Hughes, Plaintiff has sustained and will continue to

sustain monetary losses in lost income and benefits as a result of his injuries, disability, and disfigurement caused by Defendant Hughes.

## COUNT II
### [Eighth Amendment – Deliberate Indifference]

99.     Plaintiff hereby incorporates by reference each preceding paragraph of this Complaint as if fully set forth herein.

100.    Defendants had knowledge of Epps' serious medical condition, his vision loss, and the pain and suffering he endured as a result of his condition.

101.    Despite such knowledge, Defendants disregarded, ignored, and/or thwarted Plaintiff's repeated administrative and other complaints and requests for treatment for his vision loss, pain, and other related symptoms.

102.    Upon information and belief, Defendant Hughes fabricated a Medical Treatment Refusal form to intentionally deprive Epps of medical treatment and appointments.

103.    Further, Defendants had knowledge that Epps had been prescribed a treatment regimen of a multivitamin, folic acid, and thiamine to manage and alleviate his symptoms, and to potentially mitigate his vision loss.

104.    Despite such knowledge, upon information and belief, Defendants, including but not limited to Harbison and Hughes, disregarded and ignored Plaintiff's prescribed care and treatment regimen and failed and refused to provide Epps with his medications, including those prescribed by external physicians and medical personnel to treat Epps' vision loss.

105.    Further, Defendants had knowledge that Epps had been prescribed the use of dark glasses for his vision loss.

106.    Despite such knowledge, Defendant Harbison disregarded and ignored Plaintiff's prescribed care regimen and confiscated his dark glasses, without justification.

14

107.    In the manner more fully described above, Defendants were deliberately indifferent to Plaintiff's serious medical needs.

108.    Defendants' conduct was motivated by an evil motive and/or involves reckless indifference to the federally protected rights of others.

109.    As a direct and proximate result of the misconduct described herein, Plaintiff has suffered, and continues to suffer, damages in violation of his constitutional rights, as well as damages which include but are not limited to permanent injuries, pain and suffering, and permanent disability which causes pain, suffering, disability, mental anguish, and the loss of enjoyment of life now and in the future; additionally, Plaintiff will expend money for medical care and rehabilitation that he would not otherwise have had to spend but for the wrongful and deliberately indifferent actions of Defendants; Plaintiff has sustained and will continue to sustain monetary losses in lost income and benefits as a result of his injuries and disability caused by Defendants.

## COUNT III
### [Eighth Amendment - Failure to Protect]

110.    Plaintiff hereby incorporates by reference each preceding paragraph of this Complaint as if fully set forth herein.

111.    While housed at USP-Marion, Epps was incarcerated under conditions posing a substantial risk of serious harm to Epps.

112.    Defendants Dunn, Byrum, Wallace, and Sproul knew of and consciously and intentionally disregarded the substantial and excessive risk to Epps' health and safety that existed in, among other things, placing him in general population, in placing him in an illegal two-man cell with two other inmates, and in placing him in a cell with a known sex offender.

113.    After the altercation between Epps and his cellmate, there was no doubt that such a risk existed for Epps.

114.    Still, Defendants Dunn, Byrum, Wallace, and Sproul consciously and intentionally disregarded the substantial and excessive risk to Epps' health and safety by refusing to transfer Epps to a safer housing location.

115.    Defendants Dunn, Byrum, Wallace, and Sproul further failed to take reasonable measures to abate the substantial risk of serious harm that Epps faced in that they knowingly failed to request, provide, or communicate the need for, or other otherwise delayed in assigning or making arrangements for an appropriate cell or holding area for Epps' specific medial needs.

116.    Alternatively, Defendants Dunn, Byrum, Wallace, and Sproul were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed to Epps and drew that inference.

117.    Defendants acted with deliberate indifference and caused Epps unnecessary and wanton infliction of pain in violation of his constitutional rights.

118.    Defendants' conduct was motivated by an evil motive and/or involves reckless indifference to the federally protected rights of others.

119.    As a direct and proximate result of the misconduct described in this Count, Plaintiff suffered damages.

## COUNT IV
### [42 U.S.C. § 1983 - Denial of Access to Courts]

120.    Plaintiff hereby incorporates by reference each preceding paragraph of this Complaint as if fully set forth herein.

121.    As alleged more fully above, Defendants intercepted and destroyed Epps' administrative complaints, grievances, and other legal papers.

122. Defendants further intercepted, destroyed, and/or held Epps' outgoing mail, letters, legal documents, filings, and other papers so deadlines could not be met.

123. Defendants failed and refused to give Epps the forms necessary to file his administrative grievances, which prevented Epps from filing such grievances.

124. As described herein, Defendants intentionally and knowingly denied and deprived Epps of any meaningful access to administrative remedies.

125. In so doing, Defendants acted individually, jointly, and in conspiracy, and intentionally deprived Epps of his constitutional rights, including but not limited to his rights of due process and access to courts.

126. The misconduct described herein was undertaken pursuant to the policy, patterns, and practices of USP-Marion.

127. Defendants' conduct was motivated by an evil motive and/or involves reckless indifference to the federally protected rights of others.

128. As a direct and proximate result of the misconduct described in this Count, Plaintiff suffered damages.

## COUNT V
### [Fifth Amendment - Equal Protection]

129. Plaintiff hereby incorporates by reference each preceding paragraph of this Complaint as if fully set forth herein.

130. The Defendants in this case are all Caucasian.

131. Plaintiff is Black.

132. The Defendants, all while acting individually, jointly, and in conspiracy, as well as under color of law, and within the scope of their employment, denied Plaintiff equal protection of the law in violation of his Constitutional rights.

17

133.   Specifically, as more fully described above, Defendants actively participated in misconduct in the form of, among other things, refusing to provide Plaintiff with necessary medical assistance, care, medication, and treatment, and denying and depriving Plaintiff of the opportunity to pursue administrative remedies.

134.   Said misconduct was motivated by racial animus toward Epps and constituted intentional and purposeful discrimination.

135.   Said misconduct affected minorities in a grossly disproportionate manner vis-a-vis similarly-situated Caucasian individuals.

136.   In the manner more fully described above, Defendants violated Plaintiff's right to equal protection by discriminating against him on the basis of his race.

137.   The above-described misconduct was objectively unreasonable and was motivated by an evil motive and undertaken intentionally with a reckless indifference to Plaintiff's protected constitutional rights.

138.   The misconduct described in this Count was undertaken pursuant to the policies, patterns, and practices of USP-Marion.

139.   As a direct and proximate result of the misconduct described in this Count, Plaintiff suffered damages.

WHEREFORE, Plaintiff DeShawn Carlos Epps respectfully requests that the Court enter judgment in his favor and against Defendants J. Hughes, Elizabeth Harbison, Warden Daniel Sproul, UM Wallace, UM Byrum, and Ms. Dunn for relief, including but not limited to compensatory damages in an amount to be determined at trial and in an amount to compensate Plaintiff for his future medical expenses, his present and future lost wages or income and benefits,

18

punitive damages in an amount to be determined at trial, attorneys' fees and costs, and for such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted,

CARMODY MACDONALD P.C.

By:/s/ David M. Fedder
David M. Fedder, #6216046
Lauren G. Gamel, #6326932
120 South Central Avenue, Suite 1800
St. Louis, Missouri 63105-1705
314-854-8600 Telephone
314-854-8660 Facsimile
dmf@carmodymacdonald.com
lgg@carmodymacdonald.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 12, 2023, a true and correct copy of the foregoing document was filed via this Court's electronic filing system upon all counsel of record.

/s/ David M. Fedder

19