IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DESHAWN CARLOS EPPS,**<br><br>**Plaintiff,**<br><br>v.<br><br>**WARDEN SPROUL,** *et al.*,<br><br>**Defendants.** | Case No. 22-cv-00514-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff DeShawn Carlos Epps, a federal prisoner incarcerated at the United States Penitentiary located in Marion, Illinois ("USP Marion"), commenced this action for violations of his constitutional rights by filing a document pro se titled "Motion for Injunction." (Doc. 1). Because Plaintiff included in the motion a case caption listing defendants, clearly stated the relief he is seeking, and explained why he believes he is entitled to that relief, the Court construed the motion for injunction as both a complaint and a motion for preliminary injunction. (Doc. 3). The Court denied the motion for preliminary injunction and advised Plaintiff that the Complaint would be reviewed pursuant to 28 U.S.C. §1915A in a separate order. On April 13, 2022, Plaintiff filed a second preliminary injunction motion. (Doc. 4). The Court conducted a preliminary review of the Complaint and allowed Plaintiff to proceed with an Eighth Amendment claim against Defendant Nurse Hughes for denying him medical treatment for his vision loss when he came to the health care unit on December 10, 2021, seeking emergency care. (Doc. 5). The second motion for preliminary injunction was denied.

Plaintiff then filed two motions for counsel, a motion for time to amend the complaint, and

a motion seeking leave to amend the complaint. (Doc. 6, 12, 17, 24, 27). The Court granted the motions seeking court recruited counsel and denied the other pending motions. (Doc. 29). Recruited Counsel was directed to file an amended complaint on or before April 7, 2023. Plaintiff, now through counsel, sought two extensions and filed an amended complaint on June 12, 2023. The next day, Plaintiff filed a motion for leave to add Elizabeth Harbison as a defendant. (Doc. 43). The motion is **DENIED as moot,** as Elizabeth Harbison is listed as a defendant in the First Amended Complaint. (*See* Doc. 41, p. 2).

The First Amended Complaint is now before the Court for preliminary review pursuant to Section 1915A. Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

## First Amended Complaint

Plaintiff alleges that while at USP Marion, he received inadequate care for his sudden and acute vision loss. After his vision was damaged, Plaintiff claims that staff failed to protect him from attack by another inmate despite his vision impairment, which placed him in a position where he could not defend himself. (Doc. 41).

### I.     Inadequate Medical Care

In December 2021, Plaintiff ingested an unknown liquid provided to him by another inmate. Plaintiff believes the substance contained methyl alcohol or some other unknown chemical poison. After consuming the substance, Plaintiff began experiencing vision changes and pain.

On December 10, 2021, Plaintiff had a clinical encounter with Nurse Hughes. Plaintiff complained that he was experiencing blurred and diminished vision, eye pain, and headaches. He told Hughes that he had recently ingested an unknown substance and was concerned it may be

causing his symptoms. Plaintiff asked to be transferred to a hospital emergency room. Hughes denied the request and sent Plaintiff back to his cell. Hughes recommended the Plaintiff have his visions check by an eye doctor during his next clinical visit, which was scheduled to occur around December 17, 2021. Plaintiff asserts that methyl-alcohol poisoning and methyl-alcohol induced blindness are not an uncommon occurrence in federal penitentiaries. Hughes knew of or should have known of such occurrences, how to identify and diagnose them, the proper course of treatment, and the related risks.

The next day when Plaintiff awoke, his vision had drastically deteriorated. He could barely see shapes. Plaintiff was almost completely blind. He was also experiencing severe dizziness, headaches, and nosebleeds. Plaintiff was transported to the emergency room at Heartland Regional Medical Center in Marion, Illinois. After evaluation, Plaintiff was transferred to Deaconess Hospital in Evansville, Indiana for further assessment, treatment, and a higher level of care.

While at Deaconess Hospital, Plaintiff was told by his treating physicians that if his condition had been treated sooner, the damage to his optic nerves would not have been so severe. Plaintiff was discharged from the hospital on December 13, 2021, with a diagnosis of acute vision loss in both eyes and returned to USP Marion. At the time of discharge, Plaintiff's treating physician at the hospital opined that there was only a slim possibility his vision would return to a useful level, as his optic nerves were severely damaged, and the pupils no longer reacted to light. Plaintiff was prescribed a treatment regimen of a multivitamin, folic acid, and thiamine to manage and alleviate symptoms and potentially mitigate his vision loss. He was instructed to take his medications as prescribed and to return to the emergency room if his symptoms worsened. As part of his treatment, Plaintiff was given dark glasses, until his condition could be reevaluated by optometry.

Following his discharge from the hospital, Elizabeth Harbison, the health services administrator and a family nurse practitioner, and Nurse Hughes failed and refused to provide Plaintiff with his medications. Harbison and Hughes also fabricated documentation indicating that Plaintiff had refused his medications. On March 9, 2022, without justification, Plaintiff's dark glasses were confiscated from him by Harbison, after she unilaterally decided he did not require them.

Plaintiff submitted multiple complaints requesting physical and occupational therapy and communicating his need for outside optometry and other medical appointments due to his vision loss. Plaintiff did not receive the requested services, evaluation, or treatment. Specifically, in April 2022, he reported to Harbison and Hughes that he was again experiencing severe eye pain and requested to see an outside physician. Harbison and Hughes ignored or denied those requests.

## II. Failure to Protect

Once he returned to USP Marion from his hospital stay, Plaintiff was initially placed in the Special Housing Unit ("SHU"). While in SHU, Plaintiff filled out complaint forms stating that he believed that being in general population would expose him to danger and that he would be unable to defend himself due to his blindness. Plaintiff submitted complaints to Dunn, Byrum, Wallace, and Sproul expressing his concerns about being released to general population. He did not receive a written response to his complaints, but Defendants assured him that he would be transferred to a medical care level 3 facility after he was released from SHU and would not be put back in general population.

Around January 28, 2022, Plaintiff was released from SHU and placed in general population in a two-person cell with two other inmates. One of Plaintiff's cellmates was a known sex offender and the subject of investigations for attacking and raping other inmates. Plaintiff was

involved in an altercation with this cellmate on February 14, 2022. Plaintiff suffered a lacerated lip, facial abrasions, and lacerations to his forehead and neck.

Finally, Plaintiff claims that during his time at USP Marion, Defendants have intercepted and destroyed his administrative complaints, grievances Federal Tort Claims filings, and other legal papers.

In the First Amended Complaint, Plaintiff designates the following counts:

**Count 1:** Eighth Amendment deliberate indifference claim against Hughes for deliberate indifference to Plaintiff's serious medical needs on December 10, 2021.

**Count 2:** Eighth Amendment deliberate indifference claim against Hughes, Harbison, Sproul, Wallace, Byrum, and Dunn for deliberate indifference to Plaintiff's serious medical needs once he was discharged from the hospital and returned to USP Marion on December 13, 2021.

**Count 3:** Eighth Amendment failure to protect claim against Dunn, Byrum, Wallace, and Sproul.

**Count 4:** Section 1983 claim against Defendants for violating Plaintiff's right to access the courts and due process rights by destroying his outgoing mail, letters, legal documents, and other papers and by deliberately impeding the administrative remedies process.

**Count 5:** Fifth Amendment equal protection claim against Hughes, Harbison, Sproul, Wallace, Byrum, and Dunn.

## DISCUSSION

Plaintiff brings his claims seeking monetary damages pursuant to 42 U.S.C. §1983, 28 U.S.C. §§1331, 1343, and *Bivens v. Six Unknown Named Agents,* 403 U.S. 388 (1971).

### Bivens Claims: Counts 1, 2, 3, and 5

There is no Congressional authority to award damages to "plaintiffs whose constitutional rights [have been] violated by agents of the Federal Government." *Ziglar v. Abbasi,* 582 U.S. 120 (2017). In *Bivens*, however, the Supreme Court recognized an implied action for damages to

compensate persons injured by federal officers who violated the Fourth Amendment's prohibition against unreasonable searches and seizures. *Id.* Since this decision, the Supreme Court has recognized only two other instances in which an implied damages remedy under *Bivens* is available for a constitutional deprivation – a Fifth Amendment sex discrimination claim and an Eighth Amendment claim for denial of medical care for a serious medical condition. *See Davis v. Passman*, 442 U.S. 228 (1979); *Carlson v. Green,* 446 U.S. 14 (1980). Recent cases have declined to extend a *Bivens* remedy to any other contexts and stated that further expansion of *Bivens* is a "disfavored judicial activity." *Ziglar,* 582 U.S. at 135 (declining to extend *Bivens* to Fifth Amendment due process/conditions of confinement/abuse and equal protection claims and to Fourth/Fifth Amendment strip search claims); *Egbert v. Boule*, 142 S. Ct. 1793 (2022) (no *Bivens* remedy for First Amendment retaliation claim or Fourth Amendment excessive force claim).

When presented with a proposed *Bivens* claim, a district court must undertake a two-step inquiry. *See Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020). First, a court asks whether the case presents a new *Bivens* context, *i.e.*, whether it is meaningfully different from the three cases in which the Supreme Court previously implied a damages action. *Ziglar*, 582 U.S. at 138-140. Second, if a claim arises in a new context, the court must consider whether any "special factors" indicate that the Judiciary is at least arguably less equipped than Congress to "weigh the costs and benefits of allowing a damages action to proceed." *Id.* If even one reason gives the court pause before extending *Bivens* into a new context, the court cannot recognize a *Bivens* remedy.

Plaintiff has sufficiently stated Eighth Amendment claims against Hughes in Count 1 and Harbison, Hughes, and Dunn in Count 2. Further, these claims do not appear to differ in a meaningful way from the Eighth Amendment claims in *Carlson.*

To the extent Plaintiff is attempting to pursue Count 2 against Sproul, Wallace, and Byrum,

Count 2 is dismissed without prejudice as to these defendants. It is not articulated in First Amended Complaint how Sproul, Wallace, or Byrum were involved or how they had knowledge of Plaintiff's medical care or lack thereof.[1] Thus, the Court cannot plausibly infer from the allegations that Sproul, Wallace, and Byrum acted with deliberate indifference towards Plaintiff's medical needs.

Count 3 will be dismissed with prejudice. Plaintiff claims that Defendants Dunn, Byrum, Wallace, and Sproul knew of and consciously and intentionally disregarded a substantial and excessive risk to Plaintiff's health and safety by placing him in general population and in a cell with two other inmates. Even after the altercation with the cellmate, Defendants did not transfer Plaintiff to a safer housing location. These allegations are not like any of the three cases previously decided by the Supreme Court and present a new context for a *Bivens* claim. *See Ajaj v. Fozzard,* No. 14-cv-01245-JPG, 2023 WL 2989654 (S.D. Ill. Apr. 18, 2023) (declining to extend *Bivens* to an excessive force claim brought under the Eighth Amendment). *See also Chambers v. C Herrera,* 78 F. 4th 110, 1105-06 (9th Cir. 2023) ("No case has extended *Bivens* to claims that BOP employees violated the Eighth Amendment by failing to protect an inmate from other staff members. *Carlson* also concerned specific actions taken against an individual inmate, whereas [Plaintiff's] failure to protect claim would impose *Bivens* liability for inaction."); *Looper v. Jones,* No. 22-40579, 2023 WL 5184910, at *2 (5th Cir. Sept. 8, 2023) (failure to protect an inmate from a lethal attack by a cellmate did not state claim under *Bivens*).

Furthermore, a special factor exists counseling against the expansion of *Bivens.* Plaintiff, as a federal inmate, has an avenue of relief through the Bureau of Prison's Administrative Remedy

---

[1] This is in contrast to the allegations against Dunn. Plaintiff states that he submitted grievances and complaints to Harbison, Hughes, and Dunn in April 2022, regarding the delay and denial of access to medical treatment, evaluation, and medication. (Doc. 41, p. 10). *See Perez v. Fenoglio,* 792 F. 3d 777 (7th Cir. 2015).

Program. *See* 28 C.F.R. §542.10 *et seq*. Through this alternative remedial structure, Plaintiff could seek "formal review an issue relating to any aspect of [her]…own confinement," including abusive treatment by staff or housing conditions. 28 C.F.R. §542.10(a). The Supreme Court has directed that "a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, an alternative remedial structure." *Egbert,* 142 S. Ct. at 1804 (internal citations and quotations omitted). Whether or not the Administrative Remedies Program actually provided Plaintiff with the relief he is seeking is irrelevant to the Court's analysis, as "the question of whether a given remedy is adequate is a legislative determination that must be left to Congress, not the federal courts." *Id.* at 1807. Accordingly, the Court finds that the Administrative Remedy Program forecloses a *Bivens* claim for the allegations in Count 3, and Plaintiff's Eighth Amendment claim for failure to protect is dismissed with prejudice.

In Count 5, Plaintiff alleges that he is Black, and Defendants are Caucasian. He states that Defendants' misconduct – denial of medical care and treatment and depriving him of the opportunity to pursue administrative remedies – was motivated by racial animus towards him and constituted intentional and purposeful discrimination.

As with Count 3, Count 5 raises a new context which would require an extension of *Bivens*. *See Ziglar,* 582 U.S. at 138-146 (holding that prisoner's equal protection claims for racial, religious, and national origin discrimination involved a new *Bivens* context). *See also Mays v. Smith*, 70 F. 4th 198, 203 (4th Cir. 2023) ("The Supreme Court has never authorized a *Bivens* claim for procedural due process or race-based discrimination."); *Xi v. Haugen,* 68 F. 4th 824, 835-36 (3d. Cir. 2023) (Fifth Amendment equal protection claim based the plaintiff's Chinese ethnicity presented a new context). The Court further finds that special factors counsel against allowing Plaintiff's equal protection claim to proceed. In addition to the alternative administrative remedy

available discussed above, congressional inaction also counsels the Court against extending *Bivens* here. Congress had the opportunity to create a damages remedy against individual officers and chose not to do so. When passing the Prison Litigation Reform Act ("PLRA"), Congress did not provide for a "standalone damages remedy against federal jailers," suggesting that Congress "chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment." *Id.* at 148-149. Thus, the absence of a damages remedy in the PLRA weighs against recognizing a *Bivens* claim, and Count 5 is dismissed with prejudice.

### SECTION 1983 CLAIM: COUNT 4

Plaintiff alleges that Defendants intercepted and destroyed Plaintiff's legal documents and denied him any meaningful access to the administrative remedies process. (Doc. 41, p. 17). By doing so, they violated his rights of due process and access to courts. Plaintiff brings this claim under 42 U.S.C. §1983.

Count 4, as pled under Section 1983, is dismissed with prejudice because Section 1983 provides relief from actors acting under color of *state* law, not applicable to claims against federal actors. *See King v. Federal Bureau of Prisons,* 415 F.3d 634, 636 (7th Cir.2005) (observing that *Bivens* "authorizes the filing of constitutional tort suits against federal officers in much the same way that 42 U.S.C. § 1983 authorizes such suits against state officers").

### DISPOSITION

**IT IS HEREBY ORDERED** that the Motion for Leave to Add Defendant filed by Plaintiff Epps is **DENIED as moot**. (Doc. 43).

**IT IS FURTHER ORDERED** that the First Amended Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** will proceed against **HUGHES**. **COUNT 2** will proceed against **HUGHES, HARBISON,** and **DUNN. COUNT 2** is **DISMISSED without**

**prejudice** as to Sproul, Wallace, and Byrum. **COUNTS 3, 4,** and **5** are **DISMISSED with prejudice.** As all claims against Sproul, Wallace, and Byrum are dismissed, the Clerk shall **TERMINATE** them as defendants in this case.

The Clerk of Court is **DIRECTED** to serve process on **HARBISON** and **DUNN** in accordance with the original Merit Review Order. (*See* Doc. 5).

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the First Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

**IT IS SO ORDERED.**

**DATED:   October 3, 2023**

                                             *s/Stephen P. McGlynn*
                                             **STEPHEN P. MCGLYNN**
                                             **United States District Judge**