IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**DESHAWN CARLOS EPPS,**

      **Plaintiff,**

v.

**SUSAN MICHELE DAUN,
JOHN HUGHES, and
ELIZABETH HARBISON,**

      **Defendants.**

Case No. 22-cv-00514-SPM

### MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

    This matter is before the Court on the issue of whether Plaintiff properly exhausted his administrative remedies as to his allegations that Defendants violated his Eighth Amendment rights by failing to provide adequate medical treatment for damage to his vision and associated symptoms (Counts 1 and 2) or whether he was prevented from doing so. After denying Defendants' written motion for summary judgment on the issue of exhaustion, the Court held an evidentiary hearing on the issue on June 30, 2025. (Doc. 79, 96). The Court heard testimony from Plaintiff Deshawn Epps and Defendant Michele Daun, as well as Sarah Byram, a BOP employee, and Joseph Davis Jr., a former inmate at FCI Marion. After hearing from the witnesses and reviewing the record, the Court finds that Plaintiff made reasonable efforts to exhaust his remedies, but the process was rendered unavailable. Thus, this case will now advance to merits discovery on Count 1 against Hughes and Count 2 against Hughes, Harbison, and Dunn.

### BACKGROUND

    Plaintiff Deshawn Carlos Epps initiated this lawsuit while a federal prisoner incarcerated at the Federal Correctional Institution located in Marion, Illinois (FCI Marion), claiming violations

of his constitutional rights. (*See* Doc. 1, 41). Plaintiff alleges that on December 10, 2021, after ingesting an unknown substance, he began to experience blurred and diminished vision, eye pain, and headaches. Plaintiff was treated that day by Defendant John Hughes, a registered nurse, who suggested to Plaintiff that he have his vision checked by an eye doctor during the next clinical visit and sent Plaintiff back to his cell, rather than to a hospital. The next day, Plaintiff experienced a further decrease in the quality of his vision, as well as severe dizziness, headaches, and nosebleeds. Plaintiff was taken to a hospital for assessment and treatment. Plaintiff was informed by his treating physicians that he had suffered damage to his optic nerves and was diagnosed with acute vision loss. Upon his return from the hospital to FCI Marion, Plaintiff claims he was not provided adequate medical care for his vision issues and associated symptoms. He alleges he was denied medications, physical and occupational therapy, and needed treatment by outside providers.

Following a review of the First Amended Complaint pursuant to 28 U.S.C. §1915A Plaintiff is prosecuting the following claims:

**Count 1:**   Eighth Amendment claim against John Hughes for deliberate indifference to Plaintiff's serious medical needs on December 10, 2021.

**Count 2:**   Eighth Amendment claim against John Hughes, Elizabeth Harbison, and Susan Michele Daun for deliberate indifference to Plaintiff's serious medical needs once he was discharged from the hospital and returned to FCI Marion on December 13, 2021.

(Doc. 45).

On March 26, 2025, the Court issued an order denying Defendants' motion for summary judgment on the issue of exhaustion. (Doc. 79). The Court found that contested issues of fact existed regarding whether Plaintiff sought and was denied meaningful access to administrative remedies. Thus, summary judgment was inappropriate based on the briefs, and a hearing was held to resolve these disputed issues. (Doc. 96).

## LEGAL STANDARDS

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a). The PLRA states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). However, a prisoner need only exhaust "such administrative remedies as are available." 42 U.S.C. § 1997e(a); a prisoner "need not exhaust unavailable ones." *Ross v. Blake,* 578 U.S. 632, 642 (2016). "A prison's failure to give an inmate access to grievance forms, or respond to them, can render the process unavailable." *Daniels v. Baldwin,* No. 21-1686, 2022 WL 1768857, at *2 (7th Cir. June 1, 2022) (citing *Dale v. Lappin,* 376 F.3d 652, 656 (7th Cir. 2004); *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002)).

Whether a claim has been exhausted pursuant to Section 1997e(a) is generally a determination for a judge—not a jury—to make. *See Pavey v. Conley,* 544 F.3d 739, 741-42 (7th Cir. 2008), *abrogated by Perttu v. Richards*, No. 23-1324, 2025 WL 1698783 (holding that "parties have a right to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim that falls under the Seventh Amendment").[1] If a hearing is held due to an issue of fact about exhaustion of administrative remedies, the court hears evidence, finds facts, and determines credibility. *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018). The burden of proof is on the

---

[1] Plaintiff is proceeding on Eighth Amendment claims regarding the denial of constitutionally adequate medical care for his vision loss and other symptoms following the ingestion of an unknown chemical substance. As there are no common facts between Plaintiff's underlying claims and whether he exhausted his administrative remedies, the issue of exhaustion maybe resolved by the undersigned.

defendants to demonstrate that the prisoner failed to exhaust available administrative remedies. *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). Generally, a defendant will need to do more to carry the burden than plainly allege that no grievance exists, a defendant might meet said burden by submitting additional evidence such as grievance logs, counseling summaries, or evidence about the routine function of the grievance procedure. *See e.g., Daniels v. Prentice,* 741 F. App'x 342, 343-44 (7th Cir. 2018).

As an individual in custody with the Federal Bureau of Prisons (BOP) at the time of the alleged events, Plaintiff was required to exhaust his administrative remedies in accordance with the requirements laid out in BOP's Administrative Remedy Program, 28 C.F.R. § 542.10 *et seq*. (Doc. 69, p. 2; Doc. 77-2 p. 1, 17). The Administrative Remedy Program establishes a four-step process. Before initiating the formal remedy process, an inmate must first attempt to resolve his complaint by submitting an informal resolution form (BP-8) to his counselor detailing any efforts he made to address the problem. (Doc. 69, p. 9; Doc. 77-2, p. 5); 28 C.F.R. § 542.13. An inmate's BP-8 form is returned to the inmate after it is responded to by the counselor and not maintained by the institution so that the inmate can refile the BP-8 with the next form in the process, a formal administrative remedy request (BP-9). (Doc. 76-1, p. 3). Second, if the informal attempt does not resolve the issue, the inmate must submit a formal administrative remedy request (BP-9) within twenty calendar days of the event or injury giving rise to the complaint at the institution where the inmate is incarcerated. (Doc. 69, p. 3; Doc. 77-2, p. 5, 17); 28 C.F.R. §§ 542.13-14. Third, if the inmate is not satisfied with the warden's response to the administrative remedy request, the inmate may file an appeal to the appropriate regional director (BP-10) within twenty calendar days of the warden's signed response. (Doc. 69, p. 3; Doc. 77-2, p. 5, 17); 28 C.F.R. § 542.15. The fourth step is an appeal to the Office of General Counsel using a central office administrative remedy appeal

(BP-11) filed within 30 days of the regional director's response. (Doc. 69, p. 3; Doc. 77-2, p. 6, 17).

## ANALYSIS

Defendants have failed to demonstrate that the administrative process was available to Plaintiff. At the hearing, it was established that after returning from the hospital to FCI Marion on December 13, 2021, Plaintiff was housed in the special housing unit (SHU). Plaintiff remained in the SHU until January 28, 2022, when he was reassigned to general population. Plaintiff was transferred back to the SHU on February 14, 2022, where he stayed until April 6, 2022. Thus, for a majority of the time from when Plaintiff ingested the unknown substance causing vision impairment and the filing of this lawsuit on March 14, 2022, Plaintiff was housed in the SHU.

The Court finds Plaintiff's testimony regarding the difficulties of obtaining and filing remedy request forms while in the SHU credible. The first obstacle Plaintiff faced was in obtaining BP-8 form. In the SHU, which is commonly referred to as segregation, Plaintiff did not have direct access to remedy request forms. To receive a form, Plaintiff had to make a request to a member of his unit team, composed of case managers, counselors, and secretaries. Sarah Byram, the unit manager of the SHU beginning in February 2022,[2] testified that Monday through Friday someone from a unit team walks through the housing unit each day. It is at this time, inmates in the SHU can request forms from staff and ask general questions. Plaintiff testified, however, that he would request forms from staff members making rounds, including Sarah Byram, Shannon Wallace, and Defendant Michele Daun, but his requests for forms were denied. His was told by staff that they did not have any forms with them. As a result, he would have to wait and repeat his requests. Plaintiff testified that between Byram, Shannon Wallace, and Daun, he requested forms eight or

---

[2] Plaintiff's unit managers during his time in the SHU were Shannon Wallace and then beginning on February 1, 2022, Sarah Byram.

nine times and was denied.

The fact that an inmate in the SHU would be denied remedy request forms when requested and have to wait an indefinite amount of time to receive a form was testified to by both Byram and Daun. Byram confirmed that there are times when staff members do not have forms with them when they are walking through the SHU, and inmates have to lodge follow-up requests to receive forms. Daun, a case unit coordinator at the time of the alleged events,[3] also testified that she would periodically walk through the SHU, but if an inmate requested a remedy request form from her, she would direct the inmate to make such request to his counselor or unit team. As case management coordinator, she did "not provide administrative remedy forms." (Doc. 80-1, p. 2). Daun also stated that the warden and associate wardens would also not provide remedy request forms if requested by an inmate.

Based on the testimony, the Court finds that Plaintiff was effectively being denied access to the first step of the grievance process while in the SHU. Plaintiff did not have direct access to remedy request forms, he was not being provided a form when requested from members of his unit team because he or she repeatedly did not possess forms at the time they were doing rounds, and then, Plaintiff was refused forms from Daun and other higher level prison officials because they are not appropriate persons from whom to request forms. Inmates are "not required to go on scavenger hunts just to take the first step toward filing a grievance." *Hill v. Snyder,* 817 F. 3d 1037, 1041 (7th Cir. 2016). *See also Gooch v. Young,* 24 F. 4th 624, 627 (7th Cir. 2022); *Hill,* 817 F. 3d at 1041 (an inmate is not "required to pursue all conceivable alternative sources to obtain a form"). And if "prison employees refuse to provide inmates with those forms when requested, it is difficult

---

[3] Defendant Michele Daun was a case management coordinator at FCI Marion from February 7, 2016, to January 11, 2025. (Doc. 80-1). As a part of her position as case management coordinator, Daun would answer inmate questions and concerning the Administrative Remedy Program.

to understand how the inmate has any available remedies." *Dale,* 376 F. 3d at 656. Thus, because Plaintiff was denied forms after repeatedly asking the appropriate official, the grievance process was unavailable to him.

The second obstacle that prevented Plaintiff from fully exhausting was not receiving responses to his BP-8 remedy requests. Based on Plaintiff's testimony and his affidavit, he eventually did receive BP-8 forms, and he submitted them towards the end of December 2021, sometime between December 20 and December 26. He also submitted BP-8 forms around January 6 and January 12, 2022. (Doc. 77 -1, p. 3). Plaintiff asserts that he handed BP-8 forms to staff members, including Daun, Byram, Shannon Wallace, and Warden Sproul. (*Id.*). Byram and Daun testified, however, that Warden Sproul would not have been the appropriate person to whom to submit remedy request forms. Likewise, Daun stated that she too did not accept remedy request forms from inmates.

Even assuming that Warden Sproul and Daun did not receive or accept BP-8 forms from Plaintiff, the testimony and records provided by Defendants do not specifically refute Plaintiff's claims that while in the SHU he turned in BP-8 forms to Shannon Wallace and Byram that ultimately did not receive responses from a counselor. Byram did not state during her testimony that Plaintiff did not hand her BP-8 forms, only that staff including herself and Shannon Wallace, would properly turn in submitted remedy request forms to the counselors. And, the Court did not receive testimony or an affidavit from Shannon Wallace contradicting Plaintiff's assertions that Plaintiff handed him BP-8 forms. Furthermore, there is no record of any BP-8 remedy request forms submitted by Plaintiff because such records are not kept by the facility. Daun testified that once a BP-8 remedy request form is submitted, it is not tracked by FCI Marion. FCI Marion does not keep a record of the BP-8 forms that are turned in by inmates, no confirmation of receipt is

given to the inmate, and there is no way for an inmate to monitor the progress his remedy request once given to staff. Additionally, there is no procedure in place or recourse for an inmate to take if a BP-8 is not returned. While the Court does not find that any personnel at FCI Marion actively destroyed or threw away Plaintiff's remedy requests, the Court does find, based on the evidence, that Plaintiff submitted BP-8 remedy requests while in the SHU that when unanswered rendering the grievance process unavailable to him.

 Defendants argue that Plaintiff's testimony is not credible due to its inconsistencies. But the Court does not find Plaintiff's assertions disingenuous because he cannot remember exactly how many BP-8 forms he submitted and on what specific date three years following the events. Nor do the different numbers of remedy requests submitted by Plaintiff as stated in his declarations and testimony cause the Court to doubt Plaintiff's credibility. Plaintiff testified that during the entirety of his time at FCI Marion he filed around a total of twenty remedy requests. This testimony is supported by statements made by Joseph Davis Jr., who testified that once released from the SHU, Plaintiff had submitted more than ten or fifteen remedy requests because he, Joseph Davis Jr., wrote a majority of the remedy requests for Plaintiff. In his declaration, Plaintiff "estimated" that he submitted ten administrative remedy requests relating to his vision loss issue and requests for medical treatment. (Doc. 75-1, p. 1). This number does not conflict with the fact that Plaintiff filed around twenty total remedy requests, which also included complaints about staff misconduct as well as lack medical care, or the statement Plaintiff made that he filed eight or nine BP-8 remedy requests from December 2021 through early March 2022.

 Based on the evidence presented, the Court therefore concludes that Defendants have failed to meet their burden of proving that Plaintiff had available remedies that he did not exhaust. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative

defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it."). Plaintiff made a good faith effort to submit remedy request forms, and the Court will not fault him when there were clear hinderances rending the process unavailable. The Court will therefore not dismiss this case due to failure to exhaust.

## DISPOSITION

For the reasons stated in this Order, the Court finds that Defendants have failed to establish that the exhaustion process was available to Plaintiff, so this case will now proceed to merits discovery. A discovery schedule will be entered by separate order.

**IT IS SO ORDERED.**

**DATED: July 23, 2025**

        *s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**